# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES D. GREEN,

        Plaintiff,

v.                                     No. CIV-03-0287 JB/RHS

PREMIER DISTRIBUTING COMPANY,
a New Mexico Corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss or Stay Proceedings Pending Arbitration (Doc. 3).  The issue is whether the Court should compel the Plaintiff, James D. Green ("Green"), to submit his claims to binding arbitration pursuant to the arbitration provision of his employment agreement.  Because the employment agreement contains a valid, binding, and enforceable arbitration clause, the Court will grant the motion compelling arbitration and stay Green's case.

## FACTUAL BACKGROUND

Defendant Premier Distributing Company ("Premier") is a New Mexico corporation located in Albuquerque, New Mexico.  See Complaint ¶ 3, at 1 (Doc. 1, filed March 6, 2003).  Premier is engaged in interstate commerce, as it regularly purchases products from outside the State of New Mexico for distribution within New Mexico.  See Affidavit of Amy Rehfeld ¶ 4, at 2 (executed July 16, 2003).  At all relevant times, Green held the position of Controller with Premier.

During Green's employment with Premier, Premier presented Green with an Employee

Acknowledgment and Agreement, on or about December 15, 1998, which included a binding arbitration agreement and acknowledged that Green received a copy of the PDC Employee Handbook. See Employee Acknowledgment and Agreement ("Agreement"); Rehfeld Affidavit ¶ 3, at 1; Affidavit of James D. Green ¶ 5, at 1 (executed on August 4, 2003). Green objected to signing the Agreement. See id. Premier told Green that he had to sign the Agreement or Premier would terminate him. See id. ¶ 6, at 1. Premier did not give Green any additional consideration or additional benefits for signing the Agreement. See id. ¶ 7, at 1.

The Agreement that Green signed, sets forth an agreement to arbitrate any and all statutory and/or common law claims against Premier arising from their employment relationship:

> Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I voluntarily agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on the New Mexico Law Against Discrimination, Title VII of the Civil Rights Act of 1964, as amended, as well as all other state or federal laws or regulations) which would otherwise require, or allow resort to, any court or other governmental dispute resolution forum between myself and the Company . . . arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, . . . will be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the New Mexico Statutes Annotated 44-7-01 et seq.

Agreement at 1. The Agreement also provides: "I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THE BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY." (emphasis in original). The Agreement addresses the ability of Premier to modify the agreement to arbitrate:

> I understand that this handbook represents the current policies, regulations, and benefits, and that except for employment at-will status and the Arbitration Agreement,

2

any and all policies or practices can be changed at any time by the Company.  The
Company retains the right to add, change or delete wages, benefits, policies and all
other working conditions at any time (except the policy of "at-will employment" and
Arbitration Agreement, which may not be changed, altered, revised or modified unless
in writing and signed by the Owner of the Company).

Agreement at 1.

According to the Agreement, the arbitrator must be a "retired New Mexico District Court
Judge."  Id.  The rules applicable to United States District Courts will apply to the arbitration,
including rules regarding pleading, evidence, and discovery; resolution of the dispute will be based
"upon the law governing the claims and defenses pleaded."  Id.  Additionally, the Agreement requires
the arbitrator to prepare a "written reasoned opinion."  Id.

The Agreement requires only the signature of Green (or other employees).  The Agreement
does not contain a signature line for Premier.  See Agreement at 2.  The Agreement specifically lists
only causes of action usually brought by employees against employers, although it states that the list
of causes of action is not exclusive.  See Agreement at 1 ("including, but not limited to . . . .").  The
Agreement does not designate or specify the procedures to invoke arbitration and does not specify
the allocation of costs.  The Agreement does not specify or state whether the arbitration provision
extends past Green's (or any employee's) termination.

Premier terminated Green's employment on July 28, 2001.  See Complaint ¶ 20, at 3.  Green
did not submit his claims to arbitration.  Rather, he filed a Complaint with this Court on March 6,
2003, alleging: (i) age discrimination under the Age Discrimination in Employment Act ("ADEA"),
29 U.S.C. § 621- 634; (ii) disability discrimination under the Americans with Disabilities Act
("ADA"), 42 U.S.C. § 12101 - 12213; and (iii) retaliation under Title VII of the Civil Rights Act of
1964 ("Title VII"), 42 U.S.C. § 2000e - 2003-17.

Premier's counsel contacted Green's counsel by letter to request that Green enter into a stipulation dismissing or staying the lawsuit pursuant to the agreement to arbitrate. <u>See</u> Letter from Donna S. Beltran to Donald Gilpin (dated July 7, 2003). Green declined to enter into such a stipulation. <u>See</u> Letter from Donald Gilpin to Donna S. Beltran (dated July 14, 2003). Green argues that the Agreement is not enforceable. <u>See</u> Response at 1.

Premier is now before this Court seeking an Order, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, dismissing this lawsuit or, in the alternative, staying judicial proceedings pursuant to the parties' agreement to arbitrate.

## ANALYSIS OF LAW GOVERNING ARBITRATION AGREEMENTS

Upon being presented with a motion to dismiss or to stay judicial proceedings pending arbitration, a court must make three determinations. First, the court must determine whether the FAA applies to the Agreement. <u>See</u> <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 401 (1967). Second, the court must determine if the plaintiff's claims are arbitrable. <u>See</u> <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985). Third, the court must determine if the plaintiff has refused to arbitrate those claims so as to warrant an order compelling arbitration. <u>See</u>, <u>e.g.</u>, <u>PaineWebber, Inc. v. Bybyk</u>, 81 F.3d 1193, 1198 (2d Cir. 1996); <u>Paine Webber, Inc. v. Faragalli</u>, 61 F.3d 1063, 1066 (3d Cir. 1995). As all three criteria are satisfied in this case, this Court is required to issue an order staying this action in light of Green's agreement and obligation to arbitrate.

## I.   THE FAA GOVERNS THE AGREEMENT TO ARBITRATE.

Any written agreement to arbitrate "evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable" under the FAA, "save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2.  The Supreme Court of the United States has held that courts should read the term "involving commerce" as broadly as possible, so that the FAA governs any arbitration agreement affecting commerce in any way.  See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273 (1995).  Applying this standard to the facts in Allied-Bruce, the Supreme Court held that the FAA clearly governed the arbitration agreement in a consumer service agreement, where the companies seeking to enforce the agreement conducted business in multiple states and the materials used by the companies had moved in interstate commerce.  See id. at 282. In addition, sections 3 and 4 of the FAA govern a motion to compel arbitration and stay judicial proceedings whenever the arbitration agreement at issue "involves commerce."  E.g., Prima Paint v. Flood & Conklin Mfg. Co., 388 U.S. at 398-402.

In this case, Premier, which is engaged in the distribution of alcoholic beverages that originate outside of New Mexico, is involved in commerce within the meaning of the FAA.  See Rehfeld Affidavit ¶ 4, at 2.  Thus, the FAA is applicable to the Agreement, and the Agreement is subject to the FAA and to the case law interpreting it.  At oral argument, Green's counsel conceded this point. See Transcript of Hearing on October 3, 2003, Excerpt at 2, lines 2-9.  Consequently, following Allied-Bruce, the FAA governs the agreement to arbitrate in the Agreement that the parties executed in this case, which means that all "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 626 (citation omitted).

## II.   GREEN'S CLAIMS ARE ARBITRABLE.

Pursuant to the FAA, a claim is arbitrable if the following three criteria are satisfied.  First, there must be a valid agreement to arbitrate.  See Mitsubishi Motors Corp. v. Soler Chrysler-

5

Plymouth, Inc., 473 U.S. at 626.  Second, the claim must fall within the scope of the arbitration agreement.  See id.; Brown v. Coleman Co., Inc., 220 F.3d 1180, 1184 (10th Cir. 2000).  Third, the claim, if a statutory claim, must not be one that the legislative body enacting it intended to be precluded from arbitration.  See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 627-28.

## A.   GREEN AND PREMIER ENTERED INTO A VALID AGREEMENT TO ARBITRATE.

Pursuant to the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. See id. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial . . . .").  A signed written arbitration agreement is presumptively valid.  See 9 U.S.C. § 2; see  also  Shankle v. B-G Maintenance Management of Colorado, 163 F.3d 1230, 1233 (10th Cir. 1999)("The Arbitration Act thus creates a presumption in favor of arbitrability and courts must resolve all doubts concerning the scope of arbitrable issues in favor of arbitration.").  The burden is on the party opposing arbitration to proffer evidence demonstrating that the agreement is invalid.  See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91-92 (2000).

Green has not shown that the agreement to arbitrate is invalid.  As the facts demonstrate, Green agreed to arbitrate any dispute arising out of his employment as a condition of his employment with Premier when he executed the Agreement. See Agreement at 1.  Courts have consistently found that an agreement to arbitrate employment-related disputes that an employee signs as a condition of

employment is valid.  See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001); Gilmer Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991); McWilliams v. Logicon, Inc., 143 F.3d 573, 576 (10th Cir. 1998); Armijo v. Prudential Ins. Co. of America, 72 F.3d 793, 797 (10th Cir. 1995); EEOC v. Luce, Forward, Hamilton & Scripps, ___ F.3d ___, 2003 WL 22251382 (9th Cir. Oct. 1, 2003)(en banc)(overturning Duffield v. Robertson Stephens & Co., 144 F.3d 1182 (9th Cir. 1998), and ruling that employers can force workers to sign arbitration agreements as a condition of employment).  Indeed, courts generally find any signed arbitration agreement to be valid.  See, e.g., Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 223-24 (1985)(holding that signed customer agreement was a valid agreement to arbitrate); Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330, 333 (10th Cir. 1993)(holding that signed agreement was a valid agreement to arbitrate).

In determining whether any valid defense to enforcement of an arbitration agreement exists, a court should look to the state's law that controls the formation of the contract.  See Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997).

### 1.      Dumais v. American Golf Corp.

In opposition to Premier's motion, Greer relies heavily on this Court's decision in Dumais v. American Golf Corp., 150 F. Supp. 2d 1182 (D.N.M. 2001)(Vazquez, J., adopting the findings of the Magistrate Judge), aff'd, 299 F.3d 1216 (10th Cir. 2002).  Dumais, however, is distinguishable and preceded recent New Mexico decisions.

The Dumais case is a New Mexico case this Court decided after the Supreme Court announced its decision in Circuit City Stores, Inc. v. Adams.  In Dumais, this Court went through an exhaustive analysis of the factors for courts to consider when deciding whether to compel arbitration. See 150 F. Supp. 2d at 1189-1194.  The Court determined that the agreement was not enforceable

if the agreement allowed the employer to unilaterally change the terms even if the change is done only in writing.  See id. at 1193.  See also Hooters of America v. Phillips, 173 F.3d 933, 939 (4th Cir. 1999)(finding invalid an agreement to arbitrate that allowed the employer to unilaterally change the rules, in addition to containing other unconscionable aspects).

Dumais is distinguishable for at least three reasons.  First, unlike here, the agreement at issue in Dumais included a cost-splitting provision, explicitly requiring the plaintiff to pay a non-refundable administrative fee in addition to an equal share of the arbitration costs.  Second, contrary to the agreement at issue here, the Dumais agreement was stated entirely in the first person[1] and expressly applied only to a specific list of claims, including "unlawful harassment or discrimination or claims of wrongful discharge," traditionally brought by an employee against an employer; as such, it was not a mutual arbitration agreement.  The Court also found that the plaintiff had not received a copy of the handbook containing the arbitration agreement.  Finally, unlike this case, the handbook in which the agreement appeared contained contradictory statements whether the employer had the right to unilaterally modify the arbitration agreement.  This Court invalidated the agreement because of the cumulative impact of these factors, and the Tenth Circuit affirmed that holding largely based on the conflicting statements found in the employee handbook.

In addition to the distinguishable facts in Dumais, this Court decided that case without the benefit of a recent New Mexico Court of Appeals decision.  In Richards v. Allianz Life Ins. Co. of North Am., 2003-NMCA-001, 62 P.3d 320, cert. denied, No. 27, 791 (2002), the New Mexico Court

---

[1] The Agreement does refer to the employee in the first person.  E.g. Agreement at 1 ("I understand," "I voluntarily agree,").  Unlike the agreement in Dumais, however, this Agreement also uses mutual language.  E.g. Agreement at 1 ("both the Company and myself," "between myself and the Company").  The Dumais agreement contains no such mutual language.  See Dumais, 150 F. Supp. 2d at 1188 ("I agree," "I may begin the arbitration process").

of Appeals upheld an arbitration agreement under circumstances similar to those at issue here.  In

Richards, the Court of Appeals did not require any further consideration for an arbitration agreement

other than the continued employment relationship.  The Dumais decision also preceded the recent

New Mexico Supreme Court decision in Padilla v. State Mutual Auto Ins. Co., 2003-NMSC-011,

68 P.3d 901 (2003), which upheld the New Mexico policy of favoring arbitration by severing an

unconscionable provision in an insurance arbitration agreement so that the agreement itself was still

enforceable, rather than invalidated as a whole.

Two months before the Dumais decision, this Court had another opportunity to consider the

arbitration agreements that American Golf Corp. ("AGC") used.  See Zamprelli v. AGC,

Memorandum Opinion and Order Affirming Magistrate Judge, Civ. No. 00-181 BB/RLP (D.N.M.,

filed April 13, 2001)(Black, District Judge, affirming Puglisi, Magistrate Judge).  Judge Black, like

Judge Vazquez in Dumais, rejected AGC's arbitration agreement as one-sided.  Id. at 10.  Judge

Black also discussed the consideration issue, noting "the majority of courts which have considered

the matter have concluded that mere continued employment is not generally sufficient to create

consideration for the subsequent imposition of an arbitration requirement."  Id. at 7.  Like the Dumais

decision, however, Judge Black's opinion in Zamprelli was filed before the New Mexico Court of

Appeals' decision in Richards, which clarified New Mexico's position that continued employment is,

in fact, sufficient consideration for a subsequent arbitration agreement.  Moreover, Judge Black's

determination that AGC's arbitration agreement could not be enforced relied heavily on the lack of

mutuality in the agreement.  Id. at 8 ("It is clear from both the general and specific language of the

Handbook that Employer intends to be contractually bound to nothing more than an at-will

relationship.").  Again, this is the same result that Judge Vazquez and the Tenth Circuit reached in

<u>Dumais</u> with regard to AGC's arbitration agreement, and it is distinguishable from the Agreement here, which does not lack mutuality.

### 2.      There Was Valid Consideration for the Arbitration Agreement.

Under New Mexico statutory law, a written contract is presumed to have consideration.  <u>See</u> NMSA, 1978, § 8-7-2.  Green has not overcome this presumption.  Moreover, the Agreement is supported by at least two forms of adequate consideration: (i) Green's continued at-will employment; and (ii) Premier's mutual agreement to arbitrate claims against Green.  Either of these promises are, alone, sufficient under New Mexico law.

In <u>Richards v. Allianz Life Ins. Co. of North Am.</u>, the New Mexico Court of Appeals enforced an arbitration agreement under circumstances in which the employer forced an insurance agent to sign a substitute agency contract including the arbitration clause on a "take it or leave it" basis, without giving proper notice for terminating their existing contract.  The Court of Appeals rejected the agent's contention that there was no consideration because he did not get anything more than he already had.   The court held that "the continuation of the relationship formed the requisite consideration," because the employer had the right to terminate the relationship.  <u>Id.</u> at ¶ 20, 62 P.3d at 325-26 ("The district court's approach--that there is no consideration because he did not get anything more than he already had--was erroneously based on case law holding that a promise to do what one already must do does not constitute consideration.  Here, there was no unfulfilled prior obligation.  Thus, the continuation of the relationship formed the requisite consideration.").  Other New Mexico case law supports this holding.  <u>See</u> <u>Hartbarger v. Frank Paxton Co.</u>, 115 N.M. 665, 670, 857 P.2d 776, 782 (1993)("[W]here there is proof of a promise sufficient to support an implied contract, the consideration sufficient to support the implied contract will be implied as a matter of law

by the court whether the promise was part of the original employment agreement or was made later in modifying the employment relationship."); Stieber v. Journal Publ'g Co., 120 N.M. 270, 273, 901 P.2d 201, 204 (Ct. App. 1995)(holding that an at-will employee accepts unilateral, prospective modifications by continuing employment after the modification).[2]

 As in Richards, Green's continued at-will employment after his signing of the Agreement is sufficient consideration to modify the terms of his employment relationship to include an agreement to arbitrate employment-related claims.  Given New Mexico law,[3] not only did Green's continued

---

[2] Green's statements that he objected to signing the Agreement and that Premier told him that he had to sign the Agreement or face termination are legally immaterial.  Green cites no cases which establish that these arguments would invalidate the Agreement.  The Court has not found any support for Green's contention.  Case law suggests the opposite.  See Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312-14 (11th Cir. 2002)(rejecting retaliation claim by employees who were fired for refusing to sign an arbitration agreement as a condition of continued employment and noting that the Supreme Court in Circuit City Stores, Inc. v. Adams upheld a compulsory arbitration agreement in an employment application).  As set forth in Richards, rather then invalidating an agreement, Premier's ability to terminate their relationship establishes the necessary consideration for the agreement.

[3] At the hearing on  this matter, Premier provided the Court with a copy of the recent New Mexico Court of Appeals decision in Heye v. American Golf Corp., No. 22, 920 (Ct. App. Sep. 30, 2003), which held AGC's arbitration agreement unenforceable.  As in Dumais, the Court of Appeals decision was based on the lack of mutuality in AGC's agreement.  With regard to the issue of consideration, the Court of Appeals noted:

> AGC also argues that other consideration--specifically, Plaintiff's employment and continued employment--provides the necessary consideration to make the agreement enforceable.  We disagree because we determine that there is no other consideration that can support the arbitration agreement.  We find it unnecessary to resolve this issue because AGC's part of the arbitration promise is illusory.

It is possible to read this language to hold that continuation of the employment relationship is insufficient consideration for an arbitration agreement signed subsequent to the start of employment. Because this reading would leave the Heye opinion in conflict with the Court of Appeals' holding in Richards, this Court will read Heye as declining to reach the consideration issue and rejecting the arbitration agreement on other grounds.  The Heye decision does not cite the Court of Appeals' decision in either Richards or Padilla.

performance of his employment duties constitute acceptance of the new terms, but Premier's continued employment of Green after he signed the Agreement constituted sufficient consideration to enforce the Agreement.

That both Green and Premier agreed to arbitrate any and all employment-related claims constitutes an additional source of valid consideration for the Agreement.  Under New Mexico law, where a party promises to do that which he or she otherwise would not be bound to do in the absence of the agreement, there is sufficient consideration.  See Knoebal v. Chief Pontiac, Inc., 61 N.M. 53, 57, 294 P.2d 625, 628 (1956)("The creditor must secure, by reason of the extension, something which he could not otherwise demand, or the debtor must do or obligate himself to do something which he would not be bound to do in the absence of the agreement").  Premier obligated itself to do something -- arbitrate its claims against Green -- that it would not otherwise be bound to do, and valid consideration exists to enforce the Agreement.   Other courts have found that a mutual agreement to arbitrate provides sufficient consideration.  See, e.g., Blair v. Scott Speciality Gases, 283 F.3d 595, 603 (3d Cir. 2002)("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); Johnson v. Circuit City Stores, 148 F.3d 373, 378 (4th Cir. 1998)(implying mutuality for the employer where the arbitration agreement applied to "all claims").

In sum, consideration is found in Green's continued employment with Premier, the parties mutual agreement to arbitrate, and the combination of the two.  There is, therefore, sufficient valid consideration to support the Agreement.

### 3.      The Agreement is Not Illusory.

Given that there are two different, valid forms of consideration, Green's argument that the

Agreement is illusory loses much of its force.  "[A] contract need not have materiality of obligation as long as the contract is supported by consideration."  <u>Blair v. Scott Speciality Gases</u>, 283 F.3d at 604 (citation omitted)(finding adequate consideration and thus enforcing the arbitration agreement despite the company's "unilateral ability to alter the agreement").  <u>See</u> <u>Martinez v. Rocky Mountain & S.F. Ry.</u>, 39 N.M. 377, 380, 47 P.2d 903, 905 (1935)(agreement was supported by consideration; "Equity and good conscience suggest mutuality, unless the contrary expressly or by necessary implication appears.").  Moreover, for a contract to be valid, both parties do not need to have the same or equal consideration.  <u>See</u> <u>Richards v. Allianz Life Ins. Co. of North Am.</u>, 2003-NMCA-001, ¶ 19, 62 P.3d at 325 ("[Y]ou either have consideration or you do not, and the amount of consideration is not an issue."); <u>Raasch v. NCR Corp.</u>, 254 F. Supp. 2d 847, 856 (S.D. Ohio 2003)("What mutuality of obligation <u>does</u> <u>not</u> mean is that the terms of the contract must be equally balanced so that one side cannot benefit from the bargain more than the other.")(emphasis in original).  Thus, but for <u>Dumais</u>, the existence of valid consideration for the Agreement would defeat Green's illusory argument.

The United States Court of Appeals for the Tenth Circuit affirmed this Court's holding in <u>Dumais</u>, stating: "We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."  <u>Dumais v. American Golf Corp.</u>, 299 F.3d 1216, 1219 (10th Cir. 2002).  Thus, the Court must consider Green's illusory argument.

The Agreement is not illusory.  As quoted above, the provision at issue provides:

> I understand that this handbook represents the current policies, regulations, and benefits, and that except for employment at-will status and the Arbitration Agreement, any and all policies or practices can be changed at any time by the Company.  The

> Company retains the right to add, change or delete wages, benefits, policies and all other working conditions at any time (except the policy of "at-will employment" and Arbitration Agreement, which may not be changed, altered, revised or modified unless in writing and signed by the Owner of the Company).

Green argues that the Agreement is illusory because the second sentence allows the Agreement to be "modified" in a "writing signed by the Owner of the Company." To read this sentence as providing Premier with unbridled discretion to alter the Agreement does not give sufficient weight to the first sentence or construe the paragraph in its entirety. The intent of the first sentence is to prevent either party from unilaterally implementing a change to the Agreement.

Reading the two sentences together in the manner that most closely reflects the intent of the provisions, the term "writing" should be read to mean a writing to which both the affected employee and the company assented. The second sentence of the provision further limits the ability to amend the Agreement by providing the only person who can sign on the company's behalf is the owner. Premier's Arbitration Policy, therefore, allows for the parties to make changes to the arbitration policy as long as the changes are in writing and signed by the owner of the company. Because the obligation to abide by the Agreement is bilateral, the Agreement is not illusory.

This interpretation is consistent with the parties' intent. A variety of rules of contract construction also support this interpretation. For example, the maxim that, in construing a contract, the law favors a reasonable, rather than an unreasonable, interpretation supports the one that the Court has adopted. See Smith v. Tinley, 100 N.M. 663, 665, 674 P.2d 1123, 1125 (1984).

A court's obligation is to "reconcile and give meaning to all provisions of the parties' contracts." Armijo v. Prudential Ins. Co., 72 F.3d 793, 800 (10th Cir. 1995). A court should read contract provisions in a way to avoid rendering the contract illusory. See id. Even if the Agreement

were deemed ambiguous, a court is to construe the provision against the drafter at the time the contract was created.  See Rummel v. St. Paul Surplus Lines Ins. Co., 123 N.M. 767, 770, 945 P.2d 985, 989 (1997)(where insurance contract was ambiguous, court noted that the ambiguity should be construed against the insurer responsible for drafting the contract).  That rule counsels an interpretation that Premier does not have the right to unilaterally modify the Agreement.

Finally, this result also comports with the federal policy and rule that requires district courts to interpret arbitration agreements with a healthy regard for the strong policy in favor of arbitration. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25-26 (1991);  McWilliams v. Logicon, Inc., 143 F.3d 573, 576 (10th Cir. 1998).

The Tenth Circuit's holding in Dumais v. American Golf Corp. does not mandate a different result.  In that case, the arbitration agreement involved two separate and distinct provisions regarding the company's ability to modify the arbitration provisions.  One provision apparently allowed the Company to unilaterally modify the arbitration provision in the handbook:  "I further understand that the Company reserves the right to amend, supplement, rescind or revise any policy, practice, or benefit described in this handbook -- *other than employment at-will provisions* -- as it deems appropriate."  Dumais v. American Golf Corp., 299 F.3d at 1217 (emphasis added).  The other provision, which appeared in a separate part of the handbook, did not allow unilateral modification of the arbitration provision:

> I understand that this handbook superceded any and all prior handbooks and that *except for the employment at-will and the agreement to arbitrate* as provided for in this handbook, AGC reserves the right to at any time change, delete, modify, or add to any of the provisions contained in this handbook in its sole discretion . . . .

Id. (emphasis added).

This Court-- as well as the Tenth Circuit -- read those two statements to be in direct conflict -- one allowing unfettered, unilateral modification of the arbitration agreement and the other not -- and found that there was no possible way to read them in conjunction to cure any ambiguity. See id. This conflict rendered the agreement illusory. Significantly, this holding in Dumais suggests that the second statement quoted above -- which mirrors the first sentence in the Agreement between Green and Premier -- does not allow unfettered and unilateral modification of the arbitration agreement, and would not render the contract illusory.

In contrast to the Dumais agreements, the Court can construe the Agreement so there is no conflict here. The two sentences at issue can be read in conjunction to require a single, consistent interpretation -- that both the employee and the company must agree in writing to any modification of the Agreement and that the company's owner must sign the modification. In addition, unlike Dumais, the two clauses are located together, not separated by pages of other provisions. The Agreement in this case does not, on its face, allow for unfettered and unilateral modification by Premier.

### 4. The Arbitration Agreement is Binding on Premier as Well as on Green.

Green argues that the Agreement is not binding on Premier, once again relying on this Court's ruling in Dumais. Again, however, Dumais does not control this situation. This case is factually distinguishable from Dumais.

The Agreement, on its face, is a mutual one, applying equally to both Premier and its employees. In Dumais, the agreement was entirely in the first person and expressly restricted to causes of action specifically listed, which are typically brought by employees against an employer: claims of harassment, discrimination, and wrongful termination. In contrast, the language in the

16

Agreement is not entirely in the first person, is not restricted to causes of action traditionally brought by employees against employers, applies to "all disputes which may arise out of the employment context," and is binding on Premier.   A later provision reinforces this conclusion:  "I voluntarily agree that any claim, dispute and/or controversy . . . between myself and the Company. . . . shall be submitted to and determined exclusively by binding arbitration."   Agreement at 1 (emphasis added).  And the most telling provision provides:  "**I UNDERSTAND BY AGREEING TO THIS VOLUNTARY ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY**."   Agreement at 2 (emphasis in original).

Green argues that the Agreement only lists the causes of action that employees bring against employers.   The Agreement also requires, however, resolution of "all disputes" and, thus, encompasses all claims, not just those that the employee brings.   The Agreement's listing of statutory claims subject to arbitration is most likely a corporate attorney's response to the courts' former reluctance to enforce or to arbitrate these statutory claims without an express waiver.   The cited clause expressly states that the list is not exclusive.   See Agreement at 1 ("including, but not limited to . . . .").   Finally, a reading of the entire Agreement confirms that it covers claims brought by both the employee and the employer.

It is true that there is no signature line for a representative of Premier.   Even without a signature line for the company, however, Premier could not reasonably deny it is binding on the company.   To hold otherwise would endanger a host of commercial and consumer transactions.   At most, this renders the Agreement ambiguous with regard to mutuality.   When a contractual provision is ambiguous, it is construed against the drafter of the provision.   See Miller v. Triad Adoption & Counseling Servs., Inc., 2003-NMCA-055, ¶ 8, 65 P.3d 1099, 1102.   To the extent that the

17

Agreement is ambiguous whether it applies mutually to both Premier and its employees -- which it is not -- the Court would construe the document against Premier so that it does apply mutually and is binding on Premier.

The additional requirements of a writing and a signature also establish that Premier's alleged right to modify the Agreement is not unfettered. This requirement further distinguishes this case from Dumais. See Blair v. Scott Specialty Gases, 283 F.3d at 603-604 (concluding that agreement which may be altered only after putting change in writings, providing employee a copy, and allowing employee to accept change by continuing employment is not unfettered or illusory). In any event, there is no evidence that Premier has ever exercised any right to modify the Agreement, particularly during Green's employ. More importantly, there is no evidence that Premier has ever attempted to avoid its obligation to arbitrate a particular claim.

Finally, even if the second sentence at issue were deemed to render the Agreement illusory or ambiguous, recent New Mexico law, which was not available at the time Dumais was decided, requires that the Court strike the offending provision from the Agreement and enforce the remaining Agreement. In Padilla v. State Farm Mut. Auto Ins. Co., 2003-NMSC-011, 68 P.3d 901(2003), the Supreme Court of New Mexico ruled that an "escape hatch" provision in an arbitration agreement was unconscionable. Rather then not enforcing the agreement, the Supreme Court struck the offending provision out of the agreement and left "the remainder of the contract intact." Id. at 909. The Supreme Court added: "Because the appeal provision is severable from the agreement to arbitrate, the insurance contract now contains a mutual agreement to binding arbitration." Id. at 909. Similarly, even if this Court were to deem the second sentence to render the agreement illusory or ambiguous, New Mexico law would require the Court to remove that provision from the Agreement

and to enforce the remainder of the Agreement.

In short, unlike Dumais, the agreement here does not expressly exempt the employer from coverage, but rather, specifically applies to all claims related to the employment relationship. As such, the agreement is mutual, and the Court should enforce it. This conclusion is consistent with the requirement that New Mexico courts assume mutuality in a contract which does not expressly provide otherwise. See Martinez v. Rocky Mountain & S.F. Ry. Co., 39 N.M. at 380, 47 P.2d at 905. The Agreement is not illusory because it does not allow unfettered and unilateral modification by Premier, and it is mutually applicable to both Premier and its employees.

### 5.    That the Agreement Does Not Allocate Costs and Fees Does Not Render It Invalid.

The agreement to arbitrate does not specify or allocate the costs that are to be paid by the employee who proceeds to arbitration. The Agreement gave Green no guidance on what amount of fees he would be required to pay for arbitration. Green argues that the Agreement's silence on costs and fees renders this Agreement unenforceable under Tenth Circuit precedent. See Response at 5 (citing Shankle v. B-G Maintenance Management of Colorado, 163 F.3d 1230 (10th Cir 1999)(holding arbitration provision containing a cost-sharing provision unenforceable)).

Reliance on Shankle v. B-G Maintenance Management of Colorado would be misplaced. In that case, as in Dumais, the arbitration agreement at issue stated that the plaintiff "will be responsible for one-half of the arbitrator's fees, and the company is responsible for the remaining one-half." 163 F.3d at 1232. As such, Shankle's holding applies to an agreement that explicitly requires the employee to pay arbitration fees and thus is inapplicable here. In a footnote, the Tenth Circuit indicated that, were the agreement silent as to the costs imposed, the court should interpret the

19

contract in a manner to make it enforceable.  See id. at 1232 n.6 (citation omitted).  Accord, Armendariz v. Foundation Health Psychcare Serv., Inc., 24 Cal. 4th 83, 110-11, 6 P.3d 669, 687-88 (2000)(enforcing agreement silent as to allocation of arbitration fees by finding that agreement impliedly obliges employer to pay all costs unique to arbitration for claims based on unwaivable statutory rights).

In any case, Green's argument, does not sufficiently take into account subsequent Supreme Court case law.  As this Court in Dumais noted, the Supreme Court of the United States more recently held that the arbitration agreement's silence on the allocation of the costs and fees of arbitration is not, alone, sufficient to render an arbitration agreement unenforceable.  See Green Tree Fin. Corp.--Alabama v. Randolph, 531 U.S. at 92 ("The Court of Appeals therefore erred in deciding that the arbitration agreement's silence with respect to costs and fees rendered it unenforceable.").  The 2000 decision is controlling.

While the Supreme Court in Green Tree recognized that prohibitive costs might extinguish a party's duty to arbitrate in certain cases, the court placed the burden on the party opposing arbitration to proffer evidence demonstrating the likelihood of incurring prohibitive costs.  Id. at 92.  The court then determined that the plaintiff's evidence, which was based on an assumption that American Arbitration Association ("AAA") would arbitrate the matter and consisted of an estimation of AAA's filing and arbitration fees, was insufficient to meet his burden.  See 511 U.S. at 90 and n.6.  Green has similarly not met his burden in this case.

Unlike the agreement in Dumais, which included a cost-splitting provision, nothing in the Agreement at issue indicates that Green will bear the costs of arbitration.  The Agreement is silent on this issue.  Green thus has the burden of coming forward with evidence under Green Tree.  Green

has not, however, produced any evidence that he would bear unreasonable costs in pursuing arbitration.  Green has not come forward with any evidence to suggest that arbitration would be prohibitively expensive in this case and has, therefore, not met his burden under Green Tree.

Finally, to avoid any finding that the Agreement's silence as to arbitration costs will subject Green to unreasonable fees, Premier has agreed to pay all the costs of the arbitration that are unique to the arbitration process.  See Transcript of Hearing on October 3, 2003, Excerpt at 3-4.   In Dumais, even though the agreement at issue expressly imposed some of the costs of arbitration on the plaintiff, the District court held that an offer to pay all arbitration fees prevented the fee shifting from invalidating the agreement. See 150 F.Supp. 2d at 1190.  See also Brown v. Dorsey & Whitney, LLP, 267 F. Supp. 2d 61, 77 (D.D.C. 2003)(citing Large v. Conseco Fin. Serv. Corp., 292 F.3d 49, 56-57 (1st Cir. 2002)).  Prohibitive costs do not, therefore, provide a basis for invalidating the arbitration agreement between Premier and Green.

## B.    GREEN'S CLAIMS FALL WITHIN THE SCOPE OF THE AGREEMENT TO ARBITRATE.

Before, however, a court may stay a proceeding pending arbitration, it must be satisfied that the issues involved in the lawsuit are referable to arbitration under the agreement between the parties. See Dumais v. American Golf Corp., 150 F. Supp. 2d at 1190.  "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. at 626 (citation omitted).  See AT&T Tech., Inc. v. Communication Workers of Am., 475 U.S. 643, 650 (1986) ("'[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers

the asserted dispute.  Doubts should be resolved in favor of coverage.'")(quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).  There is a rebuttable presumption that the matter in dispute is subject to arbitration.  See Armijo v. Prudential Ins. Co. of Am., 72 F.3d at 797-99; Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th Cir. 1994). Green's claims fall within the scope of the Agreement.

### 1.   All Claims Fall Withing the Scope of the Agreement.

By agreeing to arbitrate "any claim, dispute, and/or controversy . . . which would otherwise require, or allow resort to, any court or other governmental dispute resolution forum between [Green] and the Company . . . arising from, related to, or having a relationship or connection with [his] seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise . . . ," Green has agreed to submit his ADA, ADEA, and Title VII claims against Premier to arbitration.  The Tenth Circuit reached this same conclusion in McWilliams v. Logicon, Inc., 143 F.3d 573 (10th Cir. 1998).  In McWilliams v. Logicon, Inc., the plaintiff executed an acceptance of employment letter in which he agreed "any controversies, claims, and/or disputes arising out of the termination of [his] employment with [Logicon], shall be settled exclusively through binding arbitration . . . pursuant to the Federal Arbitration Act."  Id. at 574.  The plaintiff argued that his claims under the ADA were not subject to the arbitration agreement.  The Tenth Circuit disagreed and held that the arbitration provision's language included employment-related disputes, such as ADA claims, especially in light of the strong federal policy in favor of arbitration.  See id. at 576.  See also Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d at 1487 (holding that pregnancy discrimination claim under Title VII was subject to arbitration under the FAA); Armijo v. Prudential Ins. Co. of Am., 72 F.3d at 798 (holding

that the plaintiff's claims under NASD were subject to arbitration).

Other courts have likewise construed language such as that found in this agreement to require the arbitration of statutory employment-related claims.  See, e.g., Matthews v. Rollins Hudig Hall Co., 72 F.3d at 53-54 (federal age discrimination claim); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir. 1991)(Title VII claims).  Green's counsel at oral argument conceded that, if the agreement to arbitrate is valid, all the claims here fall within the scope of the agreement to arbitrate.  See Transcript of Hearing on October 3, 2003, Excerpt at 2-3.  Thus, Green's ADEA, ADA, and Title VII discrimination claims fall within the scope of the agreement to arbitrate.

### 2.   The Agreement Applies to Claims Arising During the Course of Green's Employment and to the Claims at Issue Here.

The arbitration provision at issue does not specify whether it applies to disputes after the termination of employment.  Green argues that this renders the Agreement inapplicable to Green's claims, which were not filed until after his employment was terminated.  See Response at 6 (citing Gonzales v. United Southwest Nat'l Bank of Santa Fe, 93 N.M. 522, 602 P.2d 619 (1979)).  Premier terminated Green on July 28, 2001.  See Complaint ¶ 20, at 3.  Green did not file his Complaint until March 6, 2003.

The Supreme Court's decision in Gonzales is inapplicable here.  In Gonzales, the Supreme Court held:

> The trial court ruled that the issue of whether the contract was in effect at the time of the termination was a matter for the court, and not the arbitrator, to decide.  The court found that the contract had expired after three years, that there was no evidence that it had been renewed or extended in writing, as required by the Statute of Frauds, and that, having expired by its terms, it could not be revived and extended by parol agreement.  We affirm the district court decision on each point.

Id. at 523, 602 P.2d at 620.  In Gonzales, the employment contract at issue was for a fixed three year

period, which had expired.  See id.  The employee sought arbitration of a dispute that arose "well after the time that [the parties'] original written contract had expired."  Id. at 524, 602 P.2d at 621. Further, the court explicitly found that: "We do not view this dispute to have arisen 'out of the contract.'"  Id. at 524, 602 P.2d at 621.

In contrast, the Agreement in this case covers all claims related to Green's employment, including those claims brought in his Complaint.  See Agreement at 1 (covering all claims "related to . . .[Green's] employment by [Premier] . . . .").  Unlike the contract in Gonzales, there is no dispute that Green's claims relate to his employment by Premier.  The Agreement contains no expiration date and is not limited to a specific or fixed period of time; rather, Green was an at-will employee for an indefinite period of time.

This case thus falls within the holding of K.L. House Const. Co. v. City of Albuquerque, 91 N.M. 492, 576 P.2d 752 (1978), a case that the Supreme Court of New Mexico cited in Gonzales. The Gonzales court explained its earlier K.L. House decision as follows: "[E]ven though the contract had been completed we held that the parties were still bound by its broad arbitration clause because the dispute related back to the performance rendered during the contractual period."  Gonzales v. United Southwest Nat'l. Bank of Santa Fe, 93 N.M. at 523, 602 P.2d at 621.  See K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. at 493, 576 P.2d at 753 ("When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters.").  In this case, there is no limiting language.  The Court must deem Green's claims subject to arbitration under the Agreement.

Under New Mexico law, the Agreement  is valid and enforceable.  This conclusion comports

24

with New Mexico law and, in particular, with the recent decisions of <u>Richards</u> and <u>Padilla</u>. The Court believes reliance on the <u>Dumais</u> decision by this Court, the reasoning of which the Tenth Circuit partly upheld, would be misplaced in these circumstances. Not only did <u>Dumais</u> precede the <u>Richards</u> and <u>Padilla</u> cases, but the facts in <u>Dumais</u> are distinguishable from those at issue here. Thus, Green's written agreement to arbitrate his employment disputes is valid and enforceable under controlling law.

## C. ADEA, ADA, AND TITLE VII CLAIMS ARE ARBITRABLE STATUTORY CLAIMS.

Even though Green signed a valid and binding arbitration agreement, and even though his claims fall within the scope of that agreement, thus establishing the first two criteria for determining that Green's claims are subject to arbitration, the Court must still determine whether Green's statutory claims under the ADEA, ADA, and Title VII create rights that Congress did not intend to be subject to arbitration. <u>See</u> <u>Gilmer v. Interstate Johnson/Lane Corp.</u>, 500 U.S. at 26. Controlling legal authority prevents Green from meeting his burden of proving that Congress intended to preclude a waiver of judicial remedies for these statutory rights. <u>See id.</u> In <u>Gilmer v. Interstate Johnson/Lane Corp.</u>, the Supreme Court of the United States held that the plaintiff had failed to meet his burden of showing that Congress intended to preclude arbitration of claims arising under the ADEA and that, as a result, such claims could be arbitrated. The Tenth Circuit, following <u>Gilmer v. Interstate Johnson/Lane Corp.</u>, found that Title VII claims and ADA claims are subject to arbitration. <u>See</u> <u>McWilliams v. Logicon, Inc.</u>, 143 F.3d 573 (ADA); <u>Armijo v. Prudential Ins. Co. of Am.</u>, 72 F.3d at 798 (NASD); <u>Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 39 F.3d at 1487 (Title VII). Accordingly, Green's ADEA, ADA, and Title VII claims are subject to arbitration under the Arbitration Agreement.

**III.    GREEN HAS REFUSED TO ARBITRATE HIS CLAIMS.**

Green has demonstrated an intent not to comply with the terms of his agreement to arbitrate his claims.  Green's action in filing this lawsuit demonstrates an intention not to arbitrate.  Further, in response to Premier's request that Green arbitrate these claims, Green declined to submit his claims to arbitration.   Premier found it necessary, as a result of Green's refusal to comply with the Agreement, to file this motion.  Green has opposed this motion.  The law therefore requires the Court to stay these proceedings pursuant to the Arbitration Agreement.  See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985)("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); 9 U.S.C. §§3-4.

**IV.    THE COURT WILL STAY THE CASE RATHER THAN DISMISS IT.**

Premier requests that this Court enter an order dismissing Green's Complaint for lack of subject matter jurisdiction or, in the alternative, staying these proceedings pending arbitration of Green's claims.  Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure . . . or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. §4.  Section 3 provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  Id. at §3 (emphasis added).  While there is authority that supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration, the precise terms of §3 of the FAA provide that the court shall stay the trial of the action.  Compare

26

Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994)("[H]ad the district court properly granted Defendant's motion for stay [rather than entering order of dismissal], the stay order would have been interlocutory . . . .")(emphasis added), with Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1, 12 (1983)("[I]t is not clear why the Judge chose to stay the case rather than to dismiss it outright; for all the record shows, there was no reason other than the form of the Hospital's motion.").

The Honorable Lorenzo F. Garcia, United Stated Magistrate, has read the language in Adair Bus Sales, Inc. v. Blue Bird Corp. as requiring a stay:  "[T]he Tenth Circuit has held that, due to the mandatory language of the Federal Arbitration Act, 9 U.S.C. §3, it is error for the District Court to dismiss a case rather than order a stay of judicial proceedings pending arbitration, when one of the parties requests a stay."   James v. Point West Capital Corp., No. CIV 01-625 LFG/LCS, Memorandum Opinion and Order at 12 (D.N.M., filed August 6, 2001).  Judge Garcia also notes, however, that if the request is for dismissal rather than a stay, the court may order the case be dismissed with prejudice, citing Armijo v. Prudential Ins. Co., 72 F.3d 793, 797 (10th Cir. 1995).  In this case Premier did not indicate any preference of relief, but Green preferred a stay.  See Transcript of Hearing on October 3, 2003, Excerpt at 3.  Green noted that his complaint sought equitable relief.  Moreover, there is always the possibility that the parties may seek post-arbitration remedies.

Accordingly, the Court will stay this case rather than dismissing it.

**IT IS ORDERED** that Defendant's Motion to Dismiss or Stay Proceedings Pending Arbitration is granted; the case is stayed pending arbitration; Plaintiff James D. Green is ordered to submit his claims to binding arbitration as required by the arbitration provision of his employment

27

agreement; and Defendant Premier Distributing Company will bear the costs unique to arbitration.


_____
**UNITED STATES DISTRICT JUDGE**


GILPIN & KEEFE, P.C.
Donald G. Gilpin
Albuquerque, New Mexico

 *Attorney for the Plaintiff*

DINES, GROSS & ESQUIVEL, P.C.
Jim Dines
Gregory P. Williams
Albuquerque, New Mexico

FISHER & PHILLIPS, LLP
Christopher C. Hoffman
Donna S. Beltran
San Diego, California

 *Attorneys for the Defendant*

28